**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NOS. 1:12-CV-218; 1:12-CV-220**
**BANKRUPTCY CASE NO. 10-10891**

| | |
|---|---|
| **IN RE:** ) | |
| ) | |
| **EDUARDO R. HERNANDO,** ) | |
| ) | |
| Debtor, ) | |
| _____ ) | |
| | |
| **EDUARDO R. HERNANDO,** ) | |
| ) | **MEMORANDUM AND** |
| Appellant, ) | **OPINION** |
| ) | |
| **vs.** ) | |
| ) | |
| **BEVERLY MANAGEMENT, LLC,** ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Debtor Eduardo R. Hernando ("Hernando") appeals to this Court

alleged procedural and dispositive errors he claims the Bankruptcy Court

committed in resolving his Chapter 7 proceeding. First, in this Court's case

number CV-218, Hernando contends the Bankruptcy Court erred in

granting summary judgment in favor of Beverly Management, LLC,

("Beverly") in Adversary Proceeding Number 11-1017 and denying him a

discharge in the underlying Bankruptcy Case Number 10-10891. [CV-218

Doc. 4 at 7][1]. Second, in this Court's case number CV-220, Hernando contends the Bankruptcy Court erred in granting several procedural motions in favor of Beverly in the underlying Bankruptcy Case Number 10-10891. [CV-220 Doc. 4 at 1-2].[2] For the reasons stated below, this Court will affirm the Bankruptcy's Court's Order and Judgment in all respects.

## PROCEDURAL BACKGROUND

On July 28, 2010 Hernando filed a voluntary Chapter 7 petition. [B Doc. 1]. According to the Bankruptcy Court's Notice [B Doc. 5], the 11 U.S.C. § 341(a) meeting of creditors was held on September 15, 2010. During the creditors' meeting, Beverly became suspicious that Hernando had not fully disclosed his assets, and on September 21, 2010, Beverly filed a Motion to extend the time within which to object to Hernando's discharge. [B Doc. 7]. The Bankruptcy Court granted Beverly's motion over Hernando's objection on October 25, 2010, and extended the discharge objection deadline to February 14, 2011. [B Docs. 8, 11].

---

[1] Citations to the record are as follows: Citations to the record in Bankruptcy Case No. 10-10891 have the prefix letter B before the document reference. Citations to the record in the Adversary Proceeding Case No. 11-01017 have the prefix letter A before the document reference. Citations to the record in this Court contain the relevant docket (i.e. CV-218 or CV-220) and document number.

[2] In addition to the claimed procedural errors Hernando addressed in his CV-220 brief, Hernando reiterated his CV-218 arguments (erroneous grant of summary judgment and denial of discharge) in his CV-220 brief as well.

Beverly filed a an ex parte Motion for Rule 2004 Examination of Hernando and Production of Documents on December 3, 2010, which was granted on the same day. [B Docs. 13, 14]. Beverly requested the 2004 Examination of Hernando and the document production because, according to Beverly, Hernando was listed in various public records as being affiliated with numerous business entities that were not disclosed on his Schedules or Statement of Financial Affairs. [B Doc. 13-1 at 2]. In particular, Beverly sought to learn what interest, if any, Hernando had in a partnership known as the BFH, Family Limited Partnership which owned two properties in Florida. [Id.]. Beverly then filed ex parte Motions for Rule 2004 Examinations of Barbara Hernando (debtor's wife), Jorge R. Hernando (debtor's brother), Jorge A. Hernando (debtor's father), and Eibi Aizenstat.

The Bankruptcy Court granted all four of these motions. [B Docs. 15-22]. Eduardo and Barbara Hernando were ordered to produce documents by December 29, 2010 and appear for examination on January 5, 2011. [B Docs. 14, 19]. Jorge R. Hernando was ordered to produce documents by December 30, 2010 and appear on January 6, 2011. [B Doc. 20]. Jorge A. Hernando and Eibi Aizenstat were ordered to produce documents by December 31, 2010, and to appear for examination on January 7, 2011. [B

Docs. 21, 22].  In late December, 2010, Donald Rose, Florida counsel for four of the deponents, notified Beverly's counsel and Hernando's counsel that the original dates set by the Bankruptcy Court for depositions and document productions were not feasible.  [B Doc. 26 at 2].  Rose offered his office in Florida as the place to conduct the depositions and document productions on a date mutually agreeable to Hernando and Beverly. [Id.].

On January 4, 2011, the Bankruptcy Court suggested to counsel for both Hernando and Beverly during a chambers conference that Hernando provide dates to Beverly for the Rule 2004 Examinations in Florida.  [B Doc. 96 at 4].   Hernando failed to offer any dates. [Id.].  Having heard nothing from Hernando by January 25, 2011, Beverly filed an ex parte motion seeking to extend for a second time the period within which to object to Hernando's discharge.  [B Doc. 24].  The Bankruptcy Court granted Beverly's motion and extended the discharge objection period to May 16, 2011.  [B Doc. 26].  On February 3, 2011, Beverly then filed a motion to compel compliance with the order directing the Rule 2004 Examinations and the document productions.  [B Doc. 25].  The Bankruptcy Court granted Beverly's motion to compel at the conclusion of a hearing held on February 22, 2011, and authorized Beverly to set dates for the Rule 2004 Examinations and ordered the production of documents by March 15,

2011.  [B Doc. 26].   Because the Bankruptcy's Court's order setting the document production date of March 15, 2011, was not entered until March 18, 2011, Beverly's counsel agreed to an extension of the document production date up to March 30, 2011.  [B. Doc. 32-1].

On April 5, 2011, Beverly filed a motion to deny Hernando's discharge.  [B Doc. 27].  Beverly alleged that neither Hernando nor any of the other deponents had produced any documents or submitted to a 2004 Examination as of March 30, 2011.  [Id.].  On April 19, 2011, Hernando filed a response to Beverly's motion denying any malfeasance on his part.  [B Docs. 29].

The Bankruptcy Court entered an order on April 29, 2011, temporarily denying Beverly's motion to deny Hernando's discharge. The Bankruptcy Court "decline[d] to grant the Motion at the present time" with the observation "that it appears that a strategy is being developed which would merit denial of a discharge" due to Hernando's failure to comply with the Bankruptcy Court's examination orders and subpoenas.  [B Doc. 33 at 1]. The Bankruptcy Court "indicate[d] that it [was] inclined to deny the Debtor's discharge" should Beverly later produce evidence that Hernando had not complied with his obligations under Chapter 7.  [Id.]  Shortly after this order was entered, Hernando filed a "Compliance" notice on May 9, 2011, stating

5

that he had produced all documents relevant to Beverly's request. [B Doc. 34]. Hernando's Rule 2004 Examination occurred on May 20, 2011, four days after the May 16, 2011, deadline to object to his discharge had passed. [A Docs. 29-1 to 29-9].

On July 5, 2011, the Bankruptcy Court convened a hearing to determine the status of Beverly's motion to deny Hernando's discharge. [B Doc. 94]. After hearing from both counsel, the Bankruptcy Court construed Beverly's previously filed Motion to Deny Discharge as a timely filed Adversary Proceeding Complaint and granted Beverly fourteen days to file an amended "formal Complaint" to permit the Adversary Proceeding to go forward. [B Doc. 39].

Beverly filed its formal Complaint on July 18, 2011, and a Summons issued on July 19, 2011. [A Docs. 1, 2]. Hernando obtained an extension to file an Answer and thereafter filed his Answer on December 5, 2011. [A Docs. 4, 5, 13].

Hernando was the only person, of the five individuals noticed to be examined under Rule 2004, to have his deposition taken prior to the Adversary Proceeding. [A Docs. 29-1 to 29-9]. Two of the remaining deponents were examined during the pendency of the Adversary Proceeding. Those persons were Eibi Aizenstat, whose deposition was

taken on March 9, 2012 [A Docs. 29-10 to 29-15], and Jorge R. Hernando who was examined on March 12, 2012 [A Docs. 29-16 to 29-17].

On June 29, 2012, Beverly filed a Motion for Summary Judgment. [A Doc. 29]. In support of this motion Beverly offered the pleadings; the examinations under oath of Hernando, Jorge R. Hernando, Eibi Aizenstat; the Affidavits of Todd Leoni and Scott Haas; and, a letter from Hernando's counsel to the Trustee. [A Docs. 29-1 to 29-21]. Hernando filed a response to this Motion, and submitted his own affidavit. [A Docs. 32, 32-1]. The Bankruptcy Court granted Beverly's Motion for Summary Judgment from the bench on July 27, 2012. [A Doc. 46 at 12]. The Bankruptcy Court later entered its written summary judgment order in the Adversary Proceeding [A Doc 33] and its written order denying Hernando's discharge in the underlying Chapter 7 case[3]. [B Doc. 77]. Hernando now appeals both the grant of summary judgment and denial of discharge as well as multiple procedural actions on the part of the Bankruptcy Court.

---

[3] While the Bankruptcy Court's orders do not specify the provisions of 11 U.S.C. § 727 that Hernando violated so as to defeat his discharge, Beverly relies on subsections (a)(2), (a)(3), and (a)(6). [CV-218 Doc. 8 at 11].

## FACTUAL BACKGROUND

On July 28, 2010, Hernando filed a Voluntary Petition for Chapter 7 Bankruptcy relief. [B Doc. 1]. At the time he filed his Petition, Hernando had an interest in two entities relevant to this case. These entities are BFH, Family Limited Partnership, and CRT Lake, LLC (both of which will be discussed more fully *infra*). Hernando failed to disclose his interest in these entities anywhere in his Petition, specifically omitting them from his Personal Property Schedule B or in his Statement of Financial Affairs. [B Doc. 1]. Hernando failed to disclose other personal property interests as well.

### BFH Family Limited Partnership

In 2004, Hernando and his wife Barbara executed a $200,000 Promissory Note and Mortgage Security Agreement in favor Eibi Aizenstat ("Aizenstat") to purchase two parcels of real property: (1) 2521 SW 16th Terrace, Miami, Florida, 33145 ("16th Terrace"); and, (2) 16508 NE 26th Avenue, Pine Tower Condominium #604, Miami, Florida, 33160 ("Pine Tower"). [B Doc. 13-1 at 3 to 12] Without Aizenstat's knowledge and during the term of the note and security agreement, Hernando and his wife conveyed both of these properties to BFH, Family Limited Partnership ("BFH") by quit claim deeds in 2006. [A Doc. 29-19 at 7, 8]. According to

Aizenstat, he discovered that the Hernandos transferred ownership of the two properties to BFH about the time "[w]hen the mortgage had problems, wasn't getting paid[.]" [A Docs. 29-10 at 5 (Eibi Depo. at 20)].

BFH is a Nevada Limited Partnership created December 30, 2005. [A Doc. 29-19 at 5]. Hernando was the organizer and general partner[4]. [Id.] BFH currently owns the 16th Terrace property and the Pine Tower property. [A Doc. 29-1 at 8 (Hernando[5] Depo. at 30)]. The 16th Terrace property has been occupied by Hernando's uncle, aunt, and nephew since 2001. [A Doc. 29-1 at 9 (Hernando Depo. at 33-34)]. They paid no rent while residing there. [Id. at 12 (Hernando Depo. at 45)]. The Pine Tower condo is and has been unoccupied. [Id. at 9 (Hernando Depo. at 35-36)].

In March of 2009, Hernando's brother, Jorge R. Hernando, contacted Aizenstat by email and expressed a desire to help bring Hernando's mortgage current. [A Doc. 29-13 at 5]. Following this contact, Aizenstat prepared a mortgage modification agreement that was executed by

---

[4] BFH's Certificate of Existence was revoked on January 1, 2007. [A Doc. 29-19 at 6]. Under Nevada law, all the property and assets of the defaulting domestic limited partnership are held in trust by the general partner(s), in this case, Hernando. Nev. Rev. Stat. Ann. § 88.405(5).

[5] The Court notes that in Beverly's Brief, Hernando's deposition is repeatedly cited as "Eduardo Hernandez Dep." [CV-218 Doc. 8 at 8] Upon review of the deposition, the Court clarifies that the deposition is that of the debtor, Eduardo Hernando.

Aizenstat and by Jorge R. Hernando, as General Partner[6] for BFH. [A Doc. 29-9 at 1 to 5]. Following the execution of the mortgage modification agreement, Jorge R. Hernando's business, DOS Health Management, Inc., began making monthly payments of $8,000 on the mortgage. [A Docs. 29-10 at 7 (Eibi Depo. at 25 to 28); 29-16 at 11]. The mortgage held by Aizenstat on the two BFH properties was paid in full by Jorge R. Hernando's business in January, 2012. [A Docs. 29-10 at 7, 10 (Eibi Depo. at 25, 40)].

Hernando claimed in a letter he wrote May 5, 2011, prior to his Rule 2004 Examination on May 20, 2011, that the mortgage for the 16th Terrace property and the Pine Tower property exceeded the value of those properties and therefore the two properties had "no value due to property owned by this entity [BFH] being overleveraged by debt and also being in foreclosure." [A Doc. 29-5 at 4]. During his 2004 Examination, Hernando stated he had "no clue" as to the balance of the mortgage on the two properties and likewise had "no clue" as to whether anyone was making mortgage payments to Aizenstat for the two properties. [A Doc. 29-1 at 12 (Hernando Depo. at 48)]. However, as of the end of May 2011 (the time of

---

[6] In his deposition, Jorge R. Hernando disavowed any responsibility regarding BFH. Jorge R. Hernando stated that BFH was not his company, he could not recall ever taking any action on behalf of BFH, he has never been involved in the operation or control of BFH, and he was not a partner of BFH. [A Doc. 29-16 at 4, 11].

Hernando's 2004 Examination), all but eight of the mortgage payments had been made, and the properties had a value in excess of $110,000. [A Docs. 29-11 at 13, 14; 29-19].

**CRT Lake, LLC**

When asked about the entity known as CRT Lake, LLC ("CRT") during his 2004 Examination, Hernando could not recall whether it was a North Carolina or Nevada limited liability company. [A Doc. 29-1 at 15 (Hernando Depo. at 59)]. While Hernando stated the company continues to exist, it has never filed annual reports or paid filing fees. [Id. (Hernando Depo. at 60]. According to a Deed filed in the Henderson County Registry, CRT is a North Carolina limited liability company that owns a lot adjacent to Lake Osceola in Flat Rock, North Carolina. [A Doc. 29-7 at 2]. According to counsel for Hernando, however, CRT is a Nevada limited liability company created by Hernando's agent in Reno, Nevada, that owns an unencumbered "beach" lot in Henderson County, North Carolina. [A Doc. 29-21].

Hernando, through CRT, purchased the lakeside lot to provide water access to Hernando's then-owned hotel, the Lake Osceola Inn. [A Doc. 29-2 at 2 (Hernando Depo. at 66)]. While Hernando retained power over this property, he did not disclose this in the bankruptcy until August 31, 2011.

[A Doc. 29-21].  In addition, Hernando has never tried to sell the property, and, when approached with an offer to purchase this property during the pendency of his Bankruptcy proceeding, Hernando rejected an offer of $5,000 from an interested buyer.  [A Doc. 29-18].

**Other Interests**

Twenty-two days before Hernando filed his Petition, he executed a contract to purchase a 2010 Land Rover LR4 sport utility vehicle financed by JPMorgan Chase Bank, NA.  [B Doc. 54]. Hernando purchased the Land Rover by making a $2,000 cash payment, trading in a 2003 Ford Excursion valued at $8,500, and securing credit with JPMorgan Chase to cover the remaining cost.  [Id.].  Hernando failed to disclose the Land Rover anywhere in his Petition, specifically omitting it from his Personal Property Schedule B, his Creditors Holding Secured Claims Schedule D, or his Statement of Financial Affairs. [B Doc. 1].  Instead, Hernando listed a vehicle he no longer owned — the 2003 Ford Excursion he traded in for the Land Rover — on his Personal Property Schedule B.  [Id.].

Additionally, prior to 2005, Hernando owned a 20% stake in his family's various health care businesses in Florida.  [A Doc. 29-17 at 3]. Hernando resigned his ownership interest in the family companies in 2005 and, in return for surrendering all of his shares of stock, was owed

consideration of "about a million dollars, roughly." [A Doc. 29-16 at 15]. At the end of 2007, DOS of Hialeah, Inc., one of the family companies, owed Hernando $187,141.00, and DOS Healthcare II, Inc., another family company, owed Hernando $212,553.00. [A Doc. 29-17 at 8]. According to Jorge R. Hernando, after subtracting the approximate $400,000 owed to Hernando by DOS of Hialeah, Inc, and DOS Healthcare II, Inc., the remainder of the approximately one million dollars was paid to Hernando over time. [A Doc. 29-17 at 9]. Jorge R. Hernando could not recall when that remaining money was paid to Hernando. [A Doc. 29-17 at 8].

As discussed *supra*, during the pendency of this bankruptcy case, DOS Healthcare, Inc. paid Aizenstat $136,000 to extinguish BFH's modified mortgage with Aizenstat. [A Docs. 29-10 at 7, 10 (Eibi Depo. at 25, 40)]. Whether or not Hernando was still owed money by his family's companies at the time he filed his Petition or one year preceding that date is not borne out by the record. Nevertheless, Hernando was obligated to list BFH and the monthly payments on its mortgage for the Pine Tower and 16th Terrace properties made by DOS Healthcare, Inc. to Eibi, which he failed to do.

## STANDARD OF REVIEW

A bankruptcy court's resolution of "objections to discharges" is a core proceeding. 28 U.S.C. § 157(b)(2)(J). As such, this Court sits as an

appellate court in bankruptcy, and this Court may not, generally speaking, set aside a finding of fact made by the Bankruptcy Court unless it is clearly erroneous.  Bankruptcy Rule 8013; <u>In re Johnson</u>, 960 F.2d 396, 399 (4th Cir. 1992).  This Court's review of the Bankruptcy Court's Summary Judgment Order, a purely legal determination, will be *de novo.*  <u>Johnson</u>, 960 F.2d at 399.

In reviewing the Bankruptcy Court's decision, this Court is mindful that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Bankr.P. 7056; Fed.R.Civ.P. 56(a).  A fact is "material" if it "might affect the outcome of the case."  <u>N&O Pub. Co. v. RDU Airport Auth.</u>, 597 F.3d 570, 576 (4th Cir. 2010).  A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A party asserting that a fact cannot be genuinely disputed must support its assertion with citations to the record.  Fed. R. Civ. P. 56(c)(1).  "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact."  <u>Bouchat v.</u>

<u>Baltimore Ravens Football Club, Inc.</u>, 346 F.3d 514, 522 (4th Cir. 2003).  If this showing is made, the burden then shifts to the non-moving party who must convince the court that a triable issue exists.  <u>Id.</u>  Finally, in considering the summary judgment order entered in favor of Beverly, the Court must view the pleadings and materials presented in the light most favorable to Hernando, the non-moving party, and must draw all reasonable inferences in Hernando's favor as well.  <u>Adams v. UNC Wilmington</u>, 640 F.3d 550, 556 (4th Cir. 2011).

## DISCUSSION

One of the purposes of the Bankruptcy Act is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." <u>Local Loan Co. v. Hunt</u>, 292 U.S. 234, 244 (1934).  Without putting too fine a point on the matter, the Supreme Court's operative phrase in <u>Hunt</u> is "the honest debtor."  The benefit conferred upon an honest Chapter 7 debtor, who discloses and surrenders all appropriate assets, is a discharge of her debts by the Bankruptcy Court and the ability to begin her financial life anew.  The Bankruptcy Act presumes a Chapter 7 debtor should be discharged under 11 U.S.C. § 727(a) unless the debtor engages in certain prohibited conduct.  Beverly

claims Hernando's conduct in this matter violated three subsections of §
727, those being (a)(2), (a)(3), (a)(6). Hernando asserts that summary
judgment against him under § 727(a) was improper because genuine
issues of material fact exist that require a trial. The Court concludes,
however, that summary judgment was clearly appropriate under either
subsections (a)(2) or (a)(3) of 11 U.S.C. § 727.[7]

**Subsection 727(a)(2).**

Section 727(a)(2) of Title 11 of the United States Code states the
court shall grant the debtor a discharge unless:

> the debtor, with intent to hinder, delay, or defraud a creditor or
> an officer of the estate charged with custody of property under
> this title, has transferred, removed, destroyed, mutilated, or
> concealed, or has permitted to be transferred, removed,
> destroyed, mutilated, or concealed -
>
> > (A) property of the debtor, within one year before
> > the date of the filing of the petition; or
> >
> > (B) property of the estate, after the date of the filing
> > of the petition[.]

To establish that a debtor is not entitled to discharge under 11 U.S.C.
727(a)(2), the objecting party must show that the debtor's act was (1) done
with actual intent to hinder, delay, or defraud a creditor or an officer of the

---

[7] Because the Court affirms the Bankruptcy Court's summary judgment decision under
both § 727(a)(2) and § 727(a)(3), the parties' arguments concerning 11 U.S.C. §
727(a)(6) need to be addressed.

estate charged with custody of property; (2) was in fact an act of the debtor; and, (3) involved the transfer, removal, destruction, or concealment of any property of the estate after the petition was filed or of any property of the debtor one year prior to filing the petition.

The objecting party can establish the debtor's intent to hinder, delay, or defraud with circumstantial evidence, including a "pattern of concealment and non-disclosure." In re Ingle, 70 B.R. 979, 983 (Bankr. E.D.N.C. 1987). Further, a "reckless indifference to the truth is sufficient to constitute the requisite fraudulent intent[.]" Id.

In the present case, at the time Hernando filed his Petition, he failed entirely to disclose his interest in: (1) the CRT Lake, LLC; (2) the BFH Family Limited Partnership; and (3) the 2010 Land Rover LR4. Further, after filing his Petition, Hernando failed to disclose that his brother's companies were paying the mortgage for the 16th Terrace property and the Pine Tower property then titled in the name of BFH, and entity in which Hernando held an interest. In defense of these allegations by Beverly, Hernando responded in his affidavit [A Doc. 32-1 at 3] by generally alleging, without providing any factual support, that the properties held by BFH were valueless due to the disproportionately large mortgages on the

properties compared to the property values, and that the lot held by CRT was valueless due to its landlocked nature.

As an initial matter, it is undisputed that Hernando failed in his Petition to list and to explain his interests in CRT and BFH. Likewise, it is undisputed that he failed to list and to explain his interest in the Land Rover. He also provided no explanation as to why his Petition falsely listed the Ford Excursion which he had traded for the Land Rover three weeks before he filed his Petition. Hernando, in his Affidavit, attempts to divert the Bankruptcy Court's attention from his failure to list those entities, by simply asserting instead that the properties held by CRT and BFH were worthless. Even though a debtor may claim to have omitted an asset because the debtor believed it held no value, the issue of asset valuation does not supplant the requirement of listing the asset in the first instance. The prevailing rule, in the context of making a false oath under § 727(a)(4), is that "a recalcitrant debtor may not escape a … denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious." In re Chalik, 748 F.2d 616, 618 (11th Cir. 1984) (citations omitted). The logic of this construction of § 727(a)(4) applies with equal force in the context of § 727(a)(2) when a debtor conceals property under

the auspices of its worthlessness. Thus, Hernando's proffered explanation is without merit.

In any event, the undisputed facts of this case belie Hernando's claims of worthlessness. The testimony by Jorge R. Hernando and Eibi Aizenstat revealed that $136,000 was paid by DOS Healthcare, Inc., toward the mortgage held by BFH during the pendency of Hernando's case, and that the mortgage was ultimately paid in full by DOS Healthcare, Inc., in January, 2012. Clearly, then, there was value to the Pine Tower and 16th Terrace properties and Hernando's assertion that the properties were "overleveraged by debt" [B Doc. 34 at 3] was made either falsely or with reckless disregard of the truth. With regard to CRT, Todd Leoni made an offer of $5,000 for CRT's alleged "worthless" lakeside property. None of this financial information was disclosed by Hernando. Finally, Hernando does not address *at all,* either in his Affidavit or any other filing, his failure to list the Land Rover in his Petition or why the Ford Excursion was listed when Hernando had traded that vehicle pre-petition to obtain the Land Rover.

Hernando's continuous and repeated failure to list required assets on his schedules represents a pattern of behavior intending to delay and defraud the other parties in this case. Hernando's undisputed actions in

this way frustrated the intent of 727(a)(2) by hindering his creditors from discovering assets and deciding the value of the properties for themselves. Thus, summary judgment was proper under 11 U.S.C. § 727(a)(2).

**Subsection 727(a)(3).**

Section 727(a)(3) states the court shall grant the debtor a discharge unless:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

That subsection prevents discharge when a debtor fails to maintain appropriate records from which the debtor's financial condition or business transactions might be ascertained. "The purpose of section 727(a)(3) is to insure that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history. The trustee and creditors are entitled to complete and accurate information showing what property has passed through the debtor's hands prior to his bankruptcy." In re Weldon, 184 B.R. 710, 714 (Bankr. D.S.C. 1995) (citing In re Esposito, 44 B.R. 817, 826 (Bankr. S.D.N.Y. 1984)). In a § 727(a)(3) denial of discharge, the movant does not need to prove fraudulent intent on

the part of the debtor, but merely that the debtor "unreasonably failed to maintain sufficient records to adequately ascertain his financial situation." In re Schifano, 378 F.3d 60, 70 (1st Cir. 2004). In other words, the documentation produced by the debtor must be sufficient in itself to account for his financial condition and business transactions without requiring a creditor or the court to reconstruct such history through a maze of transactions and business entities. In re Juzwiak, 89 F.3d 424, 428-29 (7th Cir. 1996). A debtor can avoid denial of discharge by showing that his inability to produce records is circumstantially justifiable. 11 U.S.C. § 727(a)(3). Section 727(a)(3) is, ostensibly, an "anti-hide-and-seek" constraint upon a debtor.

The crux of Beverly's complaint against Hernando under § 727(a)(3) is that, after Beverly discovered Hernando's concealment of his interests in BFH and CRT, Hernando produced a dearth of documentation concerning these entities. Beginning with BFH, Hernando presented only the first page of that partnership's tax returns for the years 2006 through 2009. Beverly had to reconstruct Hernando's interest in BFH by obtaining from Aizenstat the original mortgage on the Pine Tower and 16th Terrace properties first held by Hernando and his wife. Beverly then had to obtain the quit claim deeds showing Hernando and his wife conveyed these properties to BFH

and thereafter had to obtain the scant documentation from Nevada concerning the existence of BFH as an entity. When Hernando was questioned during his 2004 Examination about the structure of, and any records pertaining to BFH, the following colloquy took place:

Q: Who's in charge currently of BFH, Family Limited Partnership?
A: My brother, Jorge Hernando.
Q: And is there a corporate book or any type of corporate minutes regarding BFH, Family Limited Partnership?
A: I don't know.
Q: You don't know?
A: No. I don't have possession of any corporate books for BFH.
Q: Did you ever have possession of any corporate books or minutes for BFH?
A: I don't remember. This was formed, I believe, 2001 or 2002.
Q: Where?
A: In the State of Nevada.
Q: Did you ever live in Nevada?
A: No.
Q: Why did you choose Nevada?
A: I had an attorney in Nevada that did it for me.
Q: And it was you who did it, correct? You caused this BFH to be initially formed, correct?
A: Yeah.
Q: Not your brother?
A: Correct.

\* \* \* \* \*

Q: So where did you get that EIN number for the purposes of putting it on this [BFH tax] document?
A: I think my brother gave it to me or I don't remember if I filed – - I don't think I filed it. I think my brother actually gave me the number.
Q: But this is your signature on each of these [BFH tax] forms, correct?
A: Yes.
Q: Do you have anything, any documentation showing that that

employer number is assigned to BFH, Family Limited
Partnership?
A: No.
Q: Have you ever asked to see any such documentation?
A: No.

\* \* \* \* \*

Q: Are you aware that this BFH Nevada entity, its status has
been revoked for several years?
A: I'm not aware of it, but I'm not surprised.

[A Doc. 29-1 at 9, 10, 11 (Hernando Depo. at 34-35, 40, 43)].

These exchanges are representative both of Hernando's failure to keep appropriate records concerning BFH as well as his reckless disregard of his fiduciary obligations to the partnership as one of its general partners. Likewise, as the above exchanges reflect, Hernando has shown no justification for his failure to keep even the most rudimentary documentation concerning BFH's business affairs.

Turning now to Hernando's production of records regarding CRT, Hernando supplied to Beverly a Notice of Hearing in Foreclosure and a Notice Sale allegedly pertaining to CRT. In reality, these Notices did not pertain CRT but to a different limited liability company known as CRT Lake I, LLC. [A. Docs. 29-5 at 6; 29-6 at 1]. Hernando even admitted that the lakeside parcel of land held by CRT was not in foreclosure [A Doc. 29-1 at 15 (Hernando Depo. at 60)], an admission that calls into question Hernando's motives for providing documentation regarding a similarly-

named but legally different limited liability company. As with BFH, Hernando conceded that he failed to keep and maintain any appropriate records regarding CRT. The following exchange taken from Hernando's 2004 Examination is demonstrative:

> Q: What makes you think you formed CRT Lake, LLC? The corporate book?
> A: No, I formed it -- I formed it to take ownership of the property that it has.
> Q: No, that wasn't my question. Was there a corporate book?
> A: No.
> Q: Were there corporate minutes?
> A: No.
> Q: And, in fact, you don't remember--
> A: Actually, no, I don't remember.
> Q: Who were the officers? Who were the members of that LLC?
> A: My wife and I.
> Q: Those were the only two members?
> A: Correct.
> Q: Is there any membership certificate held by either?
> A: No.
> Q: Any paperwork you have related to CRT Lake, LLC?
> A: No.
> Q: Does it continue to exist?
> A: It still exists, yes. I don't know if I ever renewed the company or not.
> Q: You don't know what state even that was formed in?
> A: I don't know if it was North Carolina or Nevada. I can't remember.

[A Doc. 29-1 at 15 (Hernando Depo. at 58-59)].

Despite numerous requests for and opportunities to present additional information, Hernando did not produce any additional documents, and did not assert a justification for the lack of corporate

books, minutes, or any other records for BFH or CRT. As a result of this conduct, Beverly asserted, and the Bankruptcy Court concluded, that Hernando failed both in his record-keeping obligations and in his obligation to assist his creditors and the court by providing additional information concerning his assets. This Court cannot condone Hernando's cat and mouse approach to his record keeping practices. There is no genuine issue of material fact regarding any legal justification for Hernando's conduct in failing to maintain proper financial and business documentation as required by § 727(a)(3). Therefore, the Bankruptcy Court's order of summary judgment[8] in favor of Beverly on this ground is affirmed.

In sum, the undisputed evidence shows that Hernando both concealed, and failed to keep and preserve, information from which Hernando's financial affairs or business transactions might be ascertained. Hernando has failed to offer any justification excusing the absence of any adequate recorded information. Therefore, the Court will affirm the Bankruptcy Court's summary judgment order and will affirm the Bankruptcy

---

[8] Hernando also challenges the Bankruptcy Court's order granting summary judgment on the vague grounds that he and his witnesses were not given an opportunity to testify and present information that would reveal genuine issues of material fact. [CV-218 Doc. 4 at 16]. The procedural background of the case reveals numerous opportunities for all involved parties to offer testimony and present information to the Bankruptcy Court. That Hernando failed timely to comply with the Bankruptcy Court's multiple orders to produce documents and provide information regarding his assets belies his assertion in this regard.

Court's order denying Hernando a discharge pursuant to 11 U.S.C. §§ 727(a)(2) and (a)(3).

**Hernando's Procedural Arguments.**

Hernando raises six procedural arguments in an effort to convince this Court to vacate the Bankruptcy Court's denial of his discharge. These arguments pertain to the:

> (1) July 12, 2011, order denying Hernando's motion to dismiss Beverly's motion objecting to discharge;
>
> (2) April 29, 2011, order permitting Beverly to file a motion objecting to discharge;
>
> (3) Orders related to the 2004 Examinations of Hernando, his wife, his father, his brother, and Eibi Aizenstat;
>
> (4) January 25, 2011 order granting an extension of the deadline to object to Hernando's discharge;
>
> (5) July 12, 2011 order construing Beverly's motion to object to discharge as an A.P. Complaint; and
>
> (6) January 25, 2012 order permitting Beverly to amend its A.P. Complaint.

[CV-220 Doc. 4 at 5-6]. Hernando's objections to the Bankruptcy Court's procedural orders merit little discussion.

Beginning first with Hernando's third argument, his objection to the 2004 Examinations, he complains, without any specificity, that Beverly's examination motions "exceeded the parameters of permissibility under Rule

2004(b)[.]" [CV-220 Doc. 4 at 18]. In substance, however, Hernando simply recites in his brief that he acted in good faith in anticipation of his own deposition and had no control over the conduct of any of the other individuals subpoenaed to be deposed and to provide documents. Id. at 19-20. Persons subject to a Rule 2004 examination may testify regarding "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to discharge." Fed.R.Bankr.P. 2004(b). Beverly sought the Rule 2004 Examinations to determine whether Hernando had any interests in certain entities in an effort to evaluate whether an Adversary Proceeding would be necessary. Under Rule 2004(b), this was a permissible basis to depose Hernando and request documents from him.

Turning now to Hernando's remaining five procedural arguments, these assertions of error are based upon a strict reading of 11 U.S.C. § 727(a) in conjunction with Fed.R.Bankr.P. 4004. By elevating form over substance, Hernando complains that a creditor's objection to a debtor's discharge must stem from an adversary proceeding complaint and not a motion, that the debtor is entitled to strict notice of a creditor's intentions, that the Bankruptcy Court erred by construing Beverly's motion as an A.P.

complaint, and Beverly should not have been allowed to amend its Complaint. [CV-220 Doc. 4]. For its part, Beverly concedes that it did not follow these rules with exact precision. [CV-220 Doc. 8 at 15]. The gist of Hernando's argument is that Beverly should not benefit from the Bankruptcy Court's "equitable procedural considerations" in disregarding the strict and precise letter of these rules. Hernando, however, is remiss in not recalling the maxim that those seeking equity must come into equity with clean hands.

Hernando commenced this proceeding without fully disclosing his financial interests. He thereafter sought to thwart Beverly's discovery of his financial interests by unnecessarily delaying his Rule 2004 Examination and by providing scant and insufficient documentation of his financial history pertaining to BFH and CRT. Finally, while Beverly has not appealed the Bankruptcy Court's determination that Hernando's untimely notice of appeal to this Court was due to excusable neglect, the Court has reviewed Hernando's motion in this regard. [B Doc. 82] While Hernando clearly neglected to file his notice of appeal on time, this Court is not convinced that his failure to do so was excusable.

There also exists a separate and independent basis to uphold the Bankruptcy Court's procedural rulings. While this Court does not condone

the parties playing fast and loose with the Bankruptcy Rules, a vacateur of the Bankruptcy Court's order of summary judgment would be a futile act. Had the Bankruptcy Court entered Hernando's discharge, Beverly was at liberty to request a revocation of that discharge under 11 U.S.C. § 727(d) within the time limits permitted by § 727(e). For these reasons, the Judgment of the Bankruptcy Court will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that Eduardo R. Hernando's objections to the Bankruptcy Court's procedural orders are **OVERRULED**.

**IT IS FURTHER ORDERED** that the order of the Bankruptcy Court granting summary judgment in favor of Beverly Management, LLC, in all respects is **AFFIRMED**.

**FINALLY, IT IS ORDERED** that the order of the Bankruptcy Court denying Eduardo R. Hernando a discharge under the Bankruptcy Code is **AFFIRMED**.

Signed: September 30, 2013

Martin Reidinger
United States District Judge